UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JODI DIPANE-SALEEM,<br>    Plaintiff,<br>    v.<br>ANDREW GALLAGHER,<br>JEFFERY BOOTH,<br>CITY OF STAMFORD, &<br>DR. DARSHAN T. SHAH,<br>    Defendant. | No. 3:15-cv-596 (MPS) |

## RULING AND ORDER

Jodi DiPane-Saleem has sued police officers Andrew Gallagher and Jeffrey Booth, the City of Stamford, and Dr. Darshan T. Shah for alleged violations of her civil rights and for common law torts arising from her arrest on forgery and related charges that were later dismissed.

The plaintiff brings seven counts. In Count I, she brings a claim under 42 U.S.C. §§ 1983 and 1988 against Gallagher and Booth for false arrest and malicious prosecution in violation of her Fourth Amendment rights. In Count II, she claims that Gallagher and Booth violated Article I, Section 7, of the Connecticut Constitution, which protects rights similar to those protected by the Fourth Amendment. In Count III, she alleges that Gallagher and Booth committed the common law tort of malicious prosecution. In Count IV, she alleges that Gallagher and Booth committed abuse of process by continuing to prosecute the plaintiff to coerce her into providing a general release of her civil claims against the officers. In Count V, she alleges intentional infliction of emotional distress against Gallagher and Booth. In Count VI, she alleges that Gallagher, Booth, and the City of Stamford are liable for negligent infliction of emotional distress. Finally, in Count VII, she brings a claim against Dr. Shah for intentional infliction of emotional distress.

Dr. Shah has moved to dismiss Count VII for failure to state a claim and for lack of jurisdiction. (ECF. No. 36.) Gallagher and Booth have moved to dismiss Counts IV, V, and VI for failing to state a claim. (ECF No. 40.) The City of Stamford has moved to dismiss Count VI for failing to state a claim. (*Id.*) For the reasons discussed below, I deny the motions.

**I.     Factual Allegations**

The plaintiff makes the following non-conclusory allegations in her Second Amended Complaint (ECF No. 34). Defendants Andrew Gallagher and Jeffrey Booth were police officers for the defendant City of Stamford. (*Id.* at ¶¶ 2–3.) Dr. Darshan T. Shah is a family friend and business associate of the plaintiff's father-in-law. (*Id.* at ¶¶ 6, 8.)

The plaintiff lived with her husband at 43 Westover Lane, Stamford, Connecticut, where they maintained a residence and stored personal property. (*Id.* at ¶¶ 6–7.) The home initially was owned by the plaintiff's father-in-law who transferred the property at some time to a limited liability company owned by Dr. Shah. (*Id.* at ¶ 8.) In October 2009, the plaintiff, her husband, and Dr. Shah agreed that the plaintiff and her husband would make payments on the property's delinquent property taxes in exchange for the right to reside in the home. (*Id.* at ¶ 9.) Dr. Shah's plan was to allow the plaintiff and her husband to live in the home until he renovated it. (*Id.* at ¶ 10.) The couple lived in the home with Dr. Shah's knowledge and consent throughout the period covered in the complaint. (*Id.* at ¶ 11.) For several years prior to 2012, the couple maintained utility accounts at the home, registered an automobile to the address, and paid property taxes—as shown in public records—for the car to the City of Stamford. (*Id.* at ¶¶ 12–13.)

At the end of September 2012, the plaintiff learned that Dr. Shah was going to begin renovations in October. (*Id.* at ¶ 14.) She was told that the initial renovations were not to include the "bedrooms, studio, or garage and that the Plaintiff and her husband would have to remove all

their possessions by the following Thanksgiving at the latest." (*Id.*) Accordingly, the plaintiff and her husband began moving during the last week of September. (*Id.* at ¶ 15.) "The Plaintiff and her husband were assured that the contractors hired by Dr. Shah were only going to dismantle the kitchen and that their possessions throughout the house and the garage would be secure until they removed them." (*Id.* at ¶ 16.) But on October 1, 2012, the plaintiff discovered that "a significant amount of their personal belongings were missing" from the home. (*Id.* at ¶ 17.)

Dr. Shah learned that his agents had removed the items and arranged to return them. (*Id.* at ¶ 18–19.) A lawn mower and other property were "found abandoned in front of the Stamford Home, but other valuable personal property was not returned." (*Id.* at ¶ 20.) The plaintiff and her husband believed that the property had been stolen because Dr. Shah and his agents would not return their belongings; so they filed a complaint with the Stamford Police Department, which was assigned to Gallagher and Booth. (*Id.* at ¶¶ 21–22.)

Gallagher told the plaintiff that Dr. Shah claimed that the plaintiff had "never resided at the Stamford Home and if they now claimed the use of the Stamford Home they were doing so as illegal 'squatters.'" (*Id.* at ¶ 23.) Dr. Shah made that false claim maliciously because he had visited the plaintiff while she was living there. (*Id.* at ¶¶ 24–25.) Dr. Shah allegedly lied to the police to conceal the theft of the plaintiff's property and to harm the plaintiff. (*Id.* at ¶ 26.)

The plaintiff told Gallagher that she could prove that Dr. Shah was lying. (*Id.* at ¶ 28.) From October 2012 to February 2013, the plaintiff repeatedly asked Gallagher about the investigation. (*Id.* at ¶ 29.) On March 4, 2013, Booth wrote to the plaintiff:

> [A]n issue has come up with residency. I am asking for you or your husband to provide proof of the residency at 43 Westover Lane during the time frame when you said you lived there. This would preferably be in the form of utility bill.

(*Id.* at ¶ 30.)

On March 7, 2013, the plaintiff sent Booth electronic copies of an electricity bill, a telephone bill, an October 2012 email from Dr. Shah about transferring the utilities to Dr. Shah's name, a September 2012 email about the plaintiff's use of the house's garage during renovations, a letter from the City of Stamford's attorney confirming that the plaintiff had paid the property taxes on the home, checks made to Dr. Shah's company for tax payments on the home, a car registration listing the home's address, a tax bill for a car registered to the home, a color copy of a City of Stamford paid receipt for a car registered to her husband's name at the Stamford home, and a Geico Insurance identification card for her husband's car, which listed the address of the Stamford home. (*Id.* at ¶ 31.) The plaintiff highlighted some of the information on these documents before sending it to Booth. (*Id.*) The plaintiff asked Gallagher and Booth to contact her or the City's attorney for more information to confirm her residency. (*Id.* at ¶ 32.) Gallagher and Booth did not contact the plaintiff or the City's attorney. (*Id.* at ¶¶ 33–34.)

On March 26, 2013, the plaintiff emailed Gallagher and Booth to ask whether the investigation was complete. (*Id.* at ¶ 35.) That same day, Gallagher wrote to the plaintiff to say that several of the documents sent on March 7, 2013, had been altered or photoshopped, and that he intended to ask the State's Attorney's Office to bring criminal charges against her. (*Id.* at ¶ 36.)

On April 18, 2013, Gallagher and Booth applied for an arrest warrant. (*Id.* at ¶ 37.) The application falsely alleged that the plaintiff had given them "obviously forged documents, including an official State of CT Motor Vehicle Registration Certificate, as well as forged utility bills." (*Id.* at ¶¶ 38–39.) The application did not refer to other records the plaintiff provided that would have refuted the forgery claim. (*Id.* at ¶ 40.) Gallagher and Booth accused the plaintiff of forgery because she had "highlighted her husband's name and address on the Motor Vehicle

4

Registration Certificate, the CL&P bill and AT&T bill." (*Id.* at ¶ 41.) They did this without even asking to inspect the original documents or checking the City of Stamford's records. (*Id.* at ¶¶ 45–46.)

The court signed the warrant because Booth and Gallagher provided false information and omitted facts showing that the documents were not forged. (*Id.* at ¶ 43.) The police arrested the plaintiff around April 26, 2013. (*Id.* at ¶ 44.) During pretrial proceedings in the plaintiff's criminal case, she gave the State's Attorney's Office the original documents that "conclusively established" that she had not committed forgery. (*Id.* at ¶ 48.) "Gallagher and Booth refused to drop the charges unless the Plaintiff provided them with a general release to protect them from being held responsible for illegally arresting the Plaintiff." (*Id.* at ¶ 49.) The plaintiff was prosecuted for more than a year even though the police knew that probable cause did not exist to arrest the plaintiff, which caused "extreme distress." (*Id.* at ¶ 50.) Finally, the charges against the plaintiff were dismissed around June 30, 2014. (*Id.* at ¶ 51.) The plaintiff brought this suit on April 23, 2016.

**II.   Discussion**

In considering a motion to dismiss, I take DiPane-Saleem's "factual allegations to be true and [draw] all reasonable inferences in" her favor. *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a

5

reasonable expectation that discovery will reveal evidence" supporting the claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A court need not accept legal conclusions as true and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

### III.   Dr. Shah's Motion to Dismiss

Dr. Shah argues that there is no subject matter jurisdiction over the single claim against him and that the plaintiff has failed to state a claim.

#### A.   Jurisdiction

The plaintiff asserts that jurisdiction exists over her intentional infliction of emotional distress claim against Dr. Shah under 28 U.S.C. § 1367. (ECF No. 34 at 1.) Except as otherwise provided, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

"For purposes of section 1367(a), claims 'form part of the same case or controversy' if they 'derive from a common nucleus of operative fact.'" *Shahriar v. Smith & Wollensky Restaurant Group, Inc.*, 659 F.3d 234, 245 (2d Cir. 2011) (quoting *Briarpatch Ltd., v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004)). "[I]n other words, they must be such that the plaintiff 'would ordinarily be expected to try them all in one judicial proceeding.'" *Montefiore Medical Ctr. v. Teamsters Local 272*, 642 F.3d 321, 332 (2d Cir. 2011) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)). Whether two claims share a common nucleus of operative fact depends on whether the facts of both claims "substantially overlap[]" or "the federal claim necessarily brought the facts underlying the state claim before the court."

*Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006). The burden of establishing jurisdiction rests on "the party who seeks the exercise of jurisdiction in his favor." *McNutt v. General Motors Acceptance Corp of Ind., Inc.*, 298 U.S. 178, 189 (1936).

Here, the claims against Dr. Shah and claims against the remaining defendants are part of the same case or controversy because "the federal claim[s] necessarily brought the facts underlying the state claim before the court" and the facts necessary to both claims "substantially overlap[]." *Acthman*, 464 F.3d at 335. For example, the federal claims necessarily involve the content of Dr. Shah's report to the police, the relationship of Dr. Shah to the plaintiff, and the events surrounding Dr. Shah's removal of the plaintiff's belongings from her home. Given the substantially overlapping factual basis of the plaintiff's claims against Dr. Shah and her federal claims against the remaining defendants, "the plaintiff 'would ordinarily be expected to try them all in one judicial proceeding.'" *Montefiore Medical Ctr.*, 642 F.3d at 332 (quoting *United Mine Workers of Am.*, 383 U.S. at 725). Therefore, I have supplemental jurisdiction over the plaintiff's claim for intentional infliction of emotional distress against Dr. Shah.

**B.     Count VII: Intentional Infliction of Emotional Distress Against Dr. Shah**

The plaintiff brings a claim for intentional infliction of emotional distress in Count VII against Dr. Shah. The plaintiff must allege "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Appleton v. Bd. of Educ.*, 254 Conn. 205, 210 (2000). The defendants' conduct must be "beyond all possible bounds of decency, . . . atrocious, and utterly intolerable . . . ." *Id.* at 210–11. Merely insulting or rude actions are insufficient to plead a claim for intentional

infliction of emotional distress. *Id.* at 211. A claim for intentional infliction of emotional distress is generally "one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Id.*

The plaintiff has plausibly alleged that Dr. Shah's conduct was extreme and outrageous. The plaintiff alleges that Dr. Shah, who was essentially the plaintiff's landlord, told the plaintiff that he would begin to renovate the house where she was living in October and that she would have until late or mid-November to remove her possessions, but instead Dr. Shah's agents removed the possessions by October 1. (*Id.* at ¶ 17–19.) When Dr. Shah would not return the belongings, the plaintiff told the police that the items were stolen. (*Id.* at ¶ 23.) When the complaint was investigated, Dr. Shah falsely told the police that the plaintiff never had lived in the home because he was trying to harm the plaintiff and to hide the theft of the plaintiff's property. (*Id.* at ¶¶ 23–26.)

His alleged behavior was not merely rude or insulting, other than perhaps his use of the word "squatter." (*Id.* at ¶ 23.) A landlord who tells his tenants that they may store their possessions at their former residence while it is under renovation, takes his tenants possessions, refuses to return them, and then lies to police investigating a complaint of theft by stating that the tenants never resided at their former residence is not "merely insulting," a "display[ of] bad manners," or the cause of "hurt feelings." *Appleton*, 254 Conn. at 211. Rather, these are facts—after drawing all reasonable inferences in the plaintiff's favor, *Harris*, 572, F.3d at 71—that could lead an average member of the community to feel "resentment against" Dr. Shah and "to exclaim, 'Outrageous!'" *Id.*

Dr. Shah's next argument is that the plaintiff has failed to adequately plead that his conduct caused the plaintiff's emotional distress. Proximate cause is "[a]n actual cause that is a

8

substantial factor in the resulting harm . . . ." *Coburn v. Lenox Homes, Inc.*, 186 Conn. 370, 383 (1982) (discussing negligence). "Proximate cause results from a sequence of events unbroken by a superseding cause, so that its causal viability continued until the moment of injury or at least until the advent of the immediate injurious force." *Id.* "The test for finding proximate cause 'is whether the harm which occurred was of the same general nature as the foreseeable risk created by the defendant's'" action. *Id.* at 384 (quoting *Merhi v. Becker*, 164 Conn. 516, 521 (1973)).

Here, the plaintiff has adequately pled that Dr. Shah's intentional misrepresentation to the police was a substantial factor in at least some of the resulting harm, *viz.*, a criminal investigation. Severe emotional distress resulting from a criminal investigation—and perhaps even a criminal prosecution prompted by a shoddy investigation—is a foreseeable risk created by intentionally providing false information to the police with the purpose of misleading them. To be sure, Dr. Shah told police that the plaintiff had never lived at his property, not that the plaintiff forged documents. (ECF No. 34 at ¶ 23.) This, he argues, means that the risk of being charged with forgery was not foreseeable. (ECF No. 37 at 14 ("[T]he Plaintiff was not arrested for trespassing or some species of that crime—rather Plaintiff's arrest and prosecution was for forgery and interference with a police investigation.").) It is irrelevant that the plaintiff was investigated for forgery and interfering with a police investigation and not some other crime such as criminal trespass (ECF No. 34 at ¶ 42), because the proximate cause inquiry asks whether the harm "was of the same *general nature* as the foreseeable risk," not whether the harm was precisely the same as the foreseeable risk, *Coburn*, 186 Conn. at 384 (emphasis added). It is entirely foreseeable that a police officer investigating a tenant's report of theft by a landlord might end up charging the tenant with a crime, for example making a false report or interfering

9

with a police investigation, after the landlord falsely reported that the tenant was illegally squatting and had never resided at the property where the theft allegedly occurred.

Dr. Shah relies on the Restatement (Second) of Torts § 46, *Deskovic v. City of Peeskill*, 673 F. Supp. 2d 154 (S.D.N.Y. 2009), *Townes v. City of New York*, 176 F.3d 138 (2d Cir. 1999), and *Wray v. City of New York*, 490 F.3d 189 (2d Cir. 2007). None of those cases address causation under Connecticut tort law; they address general principles of causation under 42 U.S.C. § 1983 and, in any event, two of the cases do not address the appropriate standard on a motion to dismiss. *Wray*, 490 F.3d at 193–94 (motion for summary judgment); *Deskovic*, 673 F. Supp. 2d at 161 (motion for severance).

Dr. Shah argues for the first time in his reply brief that that his statements to the police cannot give rise to liability because they are "absolutely privileged," and that the plaintiff has inadequately alleged both that she suffered severe emotional distress and that Dr. Shah intended to inflict severe emotional distress upon her. (ECF No. 50 at 5–6, 10–13.) I do not address those arguments because the defendant raised them for the first time in his reply brief. *Cecchini v. Schenck*, No. 3:14-CV-1704 (MPS), 2016 WL 777901, at *10 (D. Conn. Feb. 29, 2016) (citing *Ringenback v. Crabtree Cadillac-Oldsmobile, Inc.*, 99 F. Supp. 2d 199, 204 (D. Conn. 2000)).

For the reasons discussed above, the plaintiff has adequately stated a claim for intentional infliction of emotional distress against Dr. Shah.

**IV.    Motion to Dismiss by Police Officers and the City of Stamford**

    **A.    Count IV: Abuse of Process Against Gallagher and Booth**

The elements for the tort of abuse of process are (1) the use of a legal process after a proceeding has begun (2) primarily for an improper purpose. *Larobina v. McDonald*, 274 Conn. 394, 403, 406 (2005) ("An action for abuse of process lies against any person using a legal

process against another in an improper manner or to accomplish a purpose for which it was not designed.") (quoting *Varga v. Pareles*, 137 Conn. 663, 667 (1951). *See also Passaro-Henry v. Allstate Ins. Co.*, No. 3:10-cv-450 (JCH), 2010 WL 5174405 at *3 (D. Conn. Dec. 15, 2010) ("Abuse of process requires conduct (1) occurring after the issuance of process and (2) intended *primarily* to accomplish a purpose for which the process is not designed."). This tort "evolved as a 'catch-all' category to cover improper uses of the judicial machinery that did not fit within the earlier established, but narrowly circumscribed, action of malicious prosecution." *Larobina*, 274 Conn. at 406 (internal quotation marks omitted).

> Gallagher and Booth argue that the plaintiff has not stated a claim because:
>
> She does not allege particular acts of misconduct during the proceedings themselves, except to assert that the defendants, who were obviously not in charge of the criminal prosecution, wanted her to provide a general release prior to the charges being dropped, but she apparently refused to provide them with one and the charges were dropped anyway

(ECF No. 40-1 at 6.) Using process "to gain a collateral advantage extraneous to the merits" of a case is an abuse of process under Connecticut law. *Doctor's Assocs., Inc. v. Weible*, 92 F.3d 108, 114 (2d Cir. 1996). Thus, telling a criminal defendant that she must provide a general release of civil claims to the arresting officers before the criminal charges would be dropped against her establishes the improper-purpose element.

Further, a person's inaction after process has been initiated can constitute abuse of process. For example, in *El Badrawi v. Department of Homeland Security*, a detained individual who was not released by immigration authorities after "the government had agreed to allow him to voluntarily depart" stated a claim for abuse of process under Connecticut law because he alleged that "the government nevertheless detained him without any legitimate immigration purpose." *El Badrawi v. Dep't of Homeland Sec.*, 579 F. Supp. 2d 249, 278 (D. Conn. 2008). Here, even if Booth and Gallagher had a legitimate law-enforcement purpose in bringing charges

11

against the plaintiff, there was no legitimate purpose in continue to press charges against her once the documents that conclusively established her innocence were produced in pretrial proceedings.

The defendants appear to concede that the plaintiff has alleged acts of misconduct during the proceedings, but suggest that Booth's and Gallagher's conduct does not constitute the misuse of process because they "were obviously not in charge of the criminal prosecution" and "the charges were dropped anyway." (ECF No. 40-1 at 6.) It does not matter that the charges were eventually dropped. If it did, a tortfeasor who has harmed a plaintiff could escape liability by ceasing his attempts to abuse process that did not achieve his improper purpose. At this early stage of the proceedings, I must draw all reasonable inferences in favor of the plaintiff. *Harris*, 572 F.3d at 71. I therefore conclude that it is plausible that the arresting officers in this case would have had sufficient influence on the progress of the criminal case, including the prosecuting attorney, that their refusal to cease pressing charges even after being confronted with evidence that conclusively showed that the claims were baseless constitutes abuse of process. "This is the very definition of the tort of abuse of process: [law enforcement] officials were using the legal process of [criminal prosecution] for reasons other than the reasons for which the [prosecution] was designed." *El Badrawi*, 579 F. Supp. 2d at 278.

### B. Counts V: Intentional Infliction of Emotional Distress Against Gallagher and Booth

The plaintiff brings a claim of intentional infliction of emotional distress in Count V against Gallagher and Booth. The standard for intentional infliction of emotional distress is set forth above.

Gallagher and Booth argue that their actions were not extreme and outrageous. (ECF No 40-1 at 7.) Other than citing *Appleton v. Board of Education*, the defendants provide no authority

for their position. Gallagher and Booth's alleged actions were not merely insulting or rude, but were atrocious and utterly intolerable in a civilized society. *Appleton*, 254 Conn. at 210. The officers allegedly decided that the plaintiff had forged documents because she highlighted them. They made no effort to inspect the original documents, lied to a judge to obtain a warrant, caused the plaintiff to be arrested, and pursued criminal charges against her. Most seriously, after they obtained evidence that clearly established her innocence, the officers continued to press charges against her not because they thought that she was guilty, but because they wanted her to agree not to sue them for misconduct related to her arrest. This is "beyond all possible bounds of decency" and is "utterly intolerable in a civilized community." *Id.* Therefore, Gallagher and Booth's motion to dismiss as to Count V is denied.

### C. Count VI: Negligent Infliction of Emotional Distress Against Gallagher, Booth

To state a claim for negligent infliction of emotional distress, a plaintiff must allege that "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 444 (2003). The defendants argue that (1) a plaintiff may not bring a tort sounding in negligence and a claim under 42 U.S.C. § 1983 for a claim involving intentional conduct by the defendants in the same action, (2) the defendants are entitled to discretionary immunity, and (3) the statute of limitations bars this claim. The defendants withdrew their statute of limitations argument in their reply brief. (ECF No. 53 at 3 n.1.)

### 1. *Whether the plaintiff may plead inconsistent legal theories*

The defendants argue that the plaintiff may not maintain a negligence claim while also pursuing a § 1983 claim based on intentional conduct. (ECF No. 40-1 at 8.) Some district courts in the Second Circuit have "held that where a plaintiff brings claims for excessive force and [intentional infliction of emotional distress], 'a negligence claim with respect to the same conduct will not lie.'" *Outlaw v. City of Hartford*, No. 3:07-CV-01769, 2015 WL 1538230, at *12 (D. Conn. Apr. 6, 2015) (Crawford, J.); *see also*, *e.g.*, *Mazurkiewicz v. New York Transit Auth.*, 810 F. Supp. 563, 570–71 (S.D.N.Y. 1993) ("Plaintiff cannot argue that defendants engaged in intentional conduct that forms the basis of an assault and § 1983 excessive force claim and also argue that defendants were negligent towards plaintiff.").

*Outlaw* is inapposite because it was decided at summary judgment, and thus was not governed by the pleading rules set forth in Rule 8 of the Federal Rules of Civil Procedure. Rule 8(d) plainly allows a pleading to set forth claims alternatively and even inconsistently. Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones."); Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.").

### 2. *Whether the defendants are entitled to discretionary act immunity*

"Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by . . . negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law." Conn. Gen. Stat. § 52-557n(a)(2)(B). Similarly, a municipal employee "has a qualified immunity in the performance of governmental acts," which "are performed wholly for the direct benefit of the public and are supervisory or discretionary," *i.e.*

that require the "exercise of judgment." *Violana v. Fernandez*, 280 Conn. 310, 318 (2006). This immunity is sometimes called "qualified immunity" but I refer to it as "discretionary act immunity," as does the Connecticut Supreme Court, to avoid confusion with the doctrine of qualified immunity under 42 U.S.C. § 1983. Although immunity is generally a defense, "an affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (quoting *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998)). The parties do not dispute whether the officers' acts were discretionary.

Discretionary act immunity has three exceptions: (1) "when the alleged conduct involves malice, wantonness or intent to injure"; (2) "when a statute provides for a cause of action against a municipality or municipal official for failure to enforce certain laws"; and (3) "when the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm." *Id.* (quoting *Doe v. Petersen*, 279 Conn. 607, 614–15 (2006)). The parties dispute whether the plaintiff has alleged that it would have been apparent to Booth and Gallagher that their failure to act would be likely to subject the plaintiff to imminent harm. (ECF No. 49 at 22; ECF no. 53 at 4.) This exception has three elements: "(1) an imminent harm; (2) an identifiable victim [or narrowly defined identifiable classes of foreseeable victims]; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to that harm." *Violano*, 280 Conn. at 329 (internal footnote omitted) (quoting *Doe*, 279 Conn. at 616); *Haynes v. City of Middletown*, 314 Conn. 303, 312–313 (2014).

An imminent harm is one that has a significant and foreseeable risk of occurring. *Purzycki v. Town of Fairfield*, 244 Conn. 101, 110 (1988). "[W]hether a particular plaintiff comes within a cognizable class of foreseeable victims for purposes of this narrowly drawn exception to qualified immunity ultimately is a question of law for the courts, in that it is in effect a question of whether to impose a duty of care. . . . In delineating the scope of a foreseeable class of victims exception to governmental immunity, our courts have considered numerous criteria, including the imminency of any potential harm, the likelihood that harm will result from a failure to act with reasonable care, and the identifiability of the particular victim." *Grady v. Town of Somers*, 294 Conn. 324, 351 (2009). The scope of this foreseeable class of victims is narrow. *Id.* at 351–54 ("[A] six year old child present on school grounds to attend an after school day care program, and by association, his mother, who was injured when she fell on school grounds after she arrived to pick her child up, were not 'members an identifiable class of foreseeable victims'") (quoting *Durrant v. Bd. of Educ.* 284 Conn. 91, 103–04 (2007)).

Applying those principles, I determine that the plaintiff has alleged that the identifiable victim harm exception applies. First, she has alleged an imminent harm, that is a harm "that carries a significant and foreseeable risk of occurring." *Purzycki*, 244 Conn. at 110. The harm of being arrested after police seek an arrest warrant is unlike the types of harm that the Connecticut Supreme Court has held not to be imminent, such as the risk of theft or fire. *Violano*, 280 Conn. at 331–32. There is a significant and foreseeable risk that failing to adequately investigate a charge of forgery before applying for an arrest warrant, (ECF No. 34 ¶¶ 39, 44–45), would lead

16

to the criminal prosecution of the accused and that such a prosecution—based on false charges—would be severely distressing. [1]

Second, she has alleged that she was an identifiable victim. The Connecticut Supreme Court emphasized that whether an individual is an identifiable victim is a question of law that requires considering "the imminency of any potential harm, the likelihood that harm will result from a failure to act with reasonable care, and the identifiability of the particular victim." *Grady*, 294 Conn. at 351. Those factors all weigh in favor of holding that the plaintiff was an identifiable victim of Booth's and Gallagher's alleged negligence. There was a high likelihood that the plaintiff would be arrested and prosecuted when the officers presented a judge with a misleading and incomplete arrest warrant. (*Id.* at ¶¶ 38–47.) Further, the investigation, warrant, and subsequent prosecution all were directed specifically at the plaintiff, not a large undefined or unknown group of individuals.

Third, it would have been apparent to the officers in question that their conduct, seeking an arrest warrant despite having investigated the charges inadequately, would subject the plaintiff to the severe emotional distress associated with being falsely accused of a crime by the State. (*Id.* at ¶¶ 38–47.)

For these reasons, I deny the motion to dismiss on the ground that the identifiable victim exception to discretionary act immunity does not apply.

---

[1] Several Connecticut trial courts have "held that the imminent harm complained of must be physical in nature in order for the exception to apply." *Petrillo v. Town of Clinton*, No. MMXCV136010856, 2015 WL 829396, at *4 (Conn. Sup. Feb. 2, 2015) (collecting cases). At least one case in this Court noted that "the Connecticut Supreme Court has explicitly entertained an identifiable person-imminent harm claim involving what it called a "nonphysical risk of harm." *Pines v. Bailey*, No. 3:10CV866 MRK, 2012 WL 2958213, at *6 (quoting *Doe*, 279 Conn. at 618 n.10), *rev'd in part on other grounds*, 563 Fed. Appx. 814 (2d Cir. 2014). The parties do not raise this issue and I do not address it.

## V. Count VI: Indemnification for Negligent Infliction of Emotional Distress Against the City of Stamford

The plaintiff alleges in Count VI that the City of Stamford is liable under Conn. Gen. Stat. § 7-465 "for damages awarded [against Booth and Gallagher] for the infringement of the civil rights, and physical damage to the property of the plaintiff as a result of the events complained herein . . . ." (ECF No. 34 at ¶¶ 78, 80.) The City of Stamford disputes this liability. Under § 7-465 a municipality generally must indemnify its employees for

> all sums which such employee becomes obligated to pay by reason of the liability imposed upon such employee by law for damages awarded for infringement of any person's civil rights or for physical damages to person or property, except as set forth in this section, if the employee, at the time of the occurrence, accident, physical injury or damages complained of, was acting in the performance of his duties and within the scope of his employment, and if such occurrence, accident, physical injury or damage was not the result of any wilful or wanton act of such employee in the discharge of such duty.

Conn. Gen. Stat. § 7-465(a). A plaintiff who wishes to hold a municipality derivatively liable under § 7-465 must bring suit against both a municipal employee and a municipality, *Kaye v. Town of Manchester*, 20 Conn. App. 439, 441–44 (1990), and must file a "written notice of the intention to commence such action and of the time when and the place where the damages were incurred or sustained" with the clerk of the municipality within six months of the time the injury occurred, Conn. Gen. Stat. § 7-465(a).

The City does not explain why it believes that it cannot be liable given the plaintiff's allegations, but merely states "[w]hile [§] 7-465 provides an indemnity to a municipal employee from his municipal employer in the event the former suffers a judgment under certain prescribed conditions, it is quite clear that the municipality does not assume the liability in the first

instance." (ECF No. 40-1 at 11 (quoting *Fraser v. Henninger*, 173 Conn. 52, 56 (1977)).) In the City's reply, it clarifies that the claim should be dismissed because the claim against the City has not been pled in a separate count. (ECF No. 53 at 5.) According to the Connecticut Appellate Court, "[a] claim under § 7-465 should contain two counts, one against the agent, and the second against the municipality in indemnification." *Caruso v. City of Milford*, 75 Conn. App. 95, 100 n.5 (2003). This appears to be a procedural requirement or suggestion for pleading in Connecticut state courts and is inapplicable here. *See Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 428 (1996) ("[F]ederal courts sitting in diversity apply state substantive law and federal procedural law."). Federal procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Federal Rule of Civil Procedure 12(b) does not make the failure to include claims in separate counts fatal to a plaintiff's efforts to state a claim. *Compare* Fed. R. Civ. P. 12(b) *with* Fed. R. Civ. P. 10(b) ("If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense."). While the plaintiff's claim may not be artfully pled, the City has not presented an argument to show that the plaintiff fails to state a claim. Therefore, I do not dismiss the claim against the City on the ground that the claim is not included in a separate "count."[2]

---

[2] I note that the plaintiff has not alleged that she filed written notice with the City of Stamford within the requisite time. *See Perodeau v. City of Hartford*, 259 Conn. 729, 747 n. 20 (2002) ("The liability of the municipality, but not that of the municipal employee, is dependent upon the giving of proper statutory notice."). However, the City of Stamford has not moved for dismissal for failure to comply with the written notice requirement and the requirement can be waived in certain circumstances, *Fraser*, 173 Conn. at 57–59. Therefore, I decline to dismiss the claim on that ground.

## VI. Conclusion

For the reasons discussed above, Dr. Shah's Motion to Dismiss (ECF No. 36) and the remaining defendants' Motion to Dismiss (ECF No. 40) are DENIED.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:   Hartford, Connecticut
         March 15, 2016